**1:20-cv-02522-SEB-MPB**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

| | |
|---|---|
| TERIN HUMPHREY )<br>       Creditor/Appellant, )<br>        )<br>vs. )<br>        )<br>USA GYMNASTICS )<br>       Debtor, )<br>        )<br>and )<br>        )<br>TORT CLAIMANTS )<br>COMMITTEE )<br>Appellee/Sole-Objecting Party. ) | 1:20-cv-02522-SEB-MPB |

---

**ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT,
SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION
CASE NO. 18-09108-RLM-11 [DOC. 1213]**

---

**BRIEF IN SUPPORT OF APPEAL FILED ON BEHALF OF
CREDITOR/APPELLANT TERIN HUMPHREY**

---

Respectfully submitted by:    MULVEY LAW LLC

By: ___/s/ Joseph L. Mulvey_____
Joseph L. Mulvey (#30052-49)
MULVEY LAW LLC
133 W. Market Street, No. 274
Indianapolis, IN   46204
(317) 721-1339 |
joseph@mulveylawllc.com

**Counsel for Appellant, Terin Humphrey
Sexual Abuse Survivor Claim Creditor**

# TABLE OF CONTENTS

TABLE OF CASES, STATUTES, AND OTHER AUTHORITIES ……….…3
JURISDICTIONAL STATEMENT……………………………..………4
STATEMENT OF THE ISSUES FOR REVIEW ……………………….…5
STANDARD OF REVIEW …………………………………………………5
STATEMENT OF THE CASE……………………………………………6

    I.    Course of the Bankruptcy Generally Relevant
        to the Issue on Appeal and Potential Payment of Claims…………6
    II.   Disposition Below as to the Relief Sought by Terin……….……. 10
    III.  Factual Background ..……………………………………….………11

SUMMARY OF ARGUMENT ………………………………..…………….....15

ARGUMENT…………………………………………………………..……16
    I.    Terin's Claim is Timely Under Virginia Law………………………16
    II.   Because the Bankruptcy Court has Limited Authority to
        Preempt Virginia's Statute of Limitations for Sexual Abuse
        Claims, Due Process Requires Allowance of Terin's Claim as
        Timely Due to Terin's Excusable Neglect ..…………..……..…..17
    III.  The Circumstances of Terin's late-filed Claim Satisfy the
        Excusable Neglect Standard under Pioneer…………..…………..22
        A. Terin satisfies *Pioneer* Factors 1 and 2 because there is no
        danger of prejudice to the Debtor and the length of the delay
        has no impact on the Bankruptcy………………………………23
        B. Terin satisfies *Pioneer* Factors 3 and 4 because here delay
        Was the result of a medically-recognized phenomenon,
        not in her reasonable control, and she acted in good faith
        upon discovery……………………………………………………26
    IV.  The Bankruptcy Court's Denial Order Constituted Clear
        Error Because its Decision was Based Solely on the Preference
        for a "bright line rule" and Thus did not Provide Terin Due
        Process Prior to Abrogating Her Latent, yet Timely under
        Virginia Law, Claim for Sexual Abuse.……………………………30
    V.   The Survivors' Committee's Objection to the Motion Does
        Not Refute Terin's Establishment of Excusable Neglect…………31

CONCLUSION. …………………………………………………..………33

## TABLE OF CASES, STATUTES AND OTHER AUTHORITIES

**Cases:**

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 587 (2020)…………..4

*In re Heartland Steel, Inc.,* 389 F.3d 741, 743–44 (7th Cir. 2004)……………..5-6

*Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004)…………………6

*In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986)……………….8

*In re Fed.-Mogul Glob. Inc.,* 684 F.3d 355, 369 (3d Cir. 2012)…………………17

*Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005)………………………17

*Pioneer Investment Srvcs. v. Brunswick Assoc. Ltd. P'ship,*
507 U.S. 380, 392-395 (1993)…………………………………….……………18-33

*In re Future Energy Holdings Corp* 949 F.3d 806, 823 (3rd Cir. 2020)…....19-21, 25

*In re New Century TRS Holdings, Inc.* 2014 WL 2198247
(Bankr. D. Del. May 23, 2014) …………………………………….………23-24

*Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.),*
188 F.3d 116, 127 (3d Cir.1999)…………………………………………….23-24

*In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 737-738 (5th Cir. 1995)…………………26

*In re SunCruz Casinos, LLC*, 377 B.R. 741 (Bankr. S.D. Fla. 2007)…………27-28

*Needy v. CSX Transp., Inc.,* 2000 WL 34249112, (W.D. Ky. Mar 21, 2000)…..28

*Kimberg v. Univ. of Scranton,* 411 Fed.Appx. 473, 478 (3d Cir. 2010)………….29

*In re Diocese of Buffalo, N.Y.*, 620 B.R. 445 (Bank. W.D. N.Y.) (2020) …….30-31

*In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004)……………………………..33

*In Re Nat'ls Steel Corp.*, 316 B.R. 510, 515 (Bankr. N.D. Ill. 2004)…………….33

**Federal Statutes, Rules and Constitution:**

U.S. Const. amend. XIV, § 1…….…………………….…………16-22, 25, 29, 30

Fed. R. Bankr. P. 8002(a)(1)….…………………………………….……………4

Fed. R. Bankr. P. 8002(d)(3) ……………………………………………………4

Fed. R. Bankr. P. 8018 (a)(1)……………………………………………………4

Fed. R. Bankr. P. 9006 (a)(1)(C) ………………………………………………4

Fed. R. Bankr. P. 3003……………………………………………………………17

Fed. R. Bankr. P. 9006(b)(1) …………………………………………………17-18

28 U.S.C. §528(a)(1)……………………………………………………………4

11 U.S.C. §501…………………………………………………………..…17

**State Statutes:**

Va. Code § 8.01-243(D)……………………………………….……..16

Va. Code § 8.01-249 (6) …………….………………………………16, 21, 29

**Other Authorities:**

James Hopper, Ph.D. and David Lisak, Ph.D., *Why Rape and Trauma Survivors Have Fragmented and Incomplete Memories*, TIME MAGAZINE, Dec. 9, 2014…...15

# JURISDICTIONAL STATEMENT

This is an appeal from a final order of Hon. Robyn L. Moberly, United States Bankruptcy Court, S.D. Ind., Case No. 18-09108-RLM-11 (the "Bankruptcy Court") on August 26, 2020 [Appx., 20][1] (the "Denial Order") summarily denying the *Motion to Allow Late Filed Claim to be Treated as Timely Filed* filed July 30, 2020 [Appx., 78-101] (the "Motion") filed by creditor Terin Humphrey ("Terin") as to her claim for sexual abuse she suffered twice at the hands of Larry Nassar at the age of 15, filed on July 30, 2020 (the "Claim") [Appx., 6-16]. The Denial Order appeal was due on Sept. 9, 2020, extended to Sept. 30, 2020, and timely notice of appeal was filed on September 30, 2020. Fed.R.Bankr.P.8002(a)(1), (d)(3) [Appx., 17-20, 21]. The record on appeal was transmitted Oct. 30, 2020, and this brief is timely filed on Nov. 30, 2020. Fed. R. Bankr. P. 8018 (a)(1); 9006 (a)(1)(C). [Doc. No. 5]. This Court has jurisdiction of appeals from final judgments, orders, and decrees of the Bankruptcy Court. 28 U.S.C. §528(a)(1). Because the Denial Order conclusively resolved the Motion, it is final and immediately appealable. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 587 (2020).

---

[1] All portions of the record below cited herein are contained in the Appendix of excerpts from the record filed herewith, specifically referencing the page number added to the lower right-hand corner of the Appendix.

## STATEMENT OF THE ISSUE FOR REVIEW

Whether the Denial Order of Terin's Motion constitutes reversible error when Terin filed her Claim for damages for sexual abuse suffered on two occasions by Larry Nassar in July 2002 at the age of fifteen (15) years-old, after the April 29, 2019 Bar Date, but almost immediately after she began to suffer symptoms of the abuse and prior to the applicable statute of limitations.

**Answer:**   The Denial Order must be reversed because the Bankruptcy Court's limited Constitutional authority to pre-empt Virginia's statute of limitations governing Terin's Claim (expiring, at the earliest, on August 14, 2024) was exceeded when the Bankruptcy Court declined to afford Terin due process by not balancing the circumstances of her Claim (acknowledged good faith and veracity of Terin, no delay in filing her Claim once diagnosed) against the impact on Debtor and the Bankruptcy if the Motion is granted (no prejudice to the Debtor, or any other party to the Bankruptcy, because no plan is yet confirmed, no payments made, there is no certainty as to what plan, if any, will be confirmed, and Debtor does not object to the Motion).

## STANDARD OF REVIEW

"[T]he district court, reviews the bankruptcy court's findings of fact for clear error and its legal conclusions *de novo. In re Heartland Steel, Inc.,* 389 F.3d

741, 743–44 (7th Cir. 2004). "The Court may overturn the decision of the

bankruptcy court when its decision is premised on an incorrect legal principle

or a clearly erroneous factual finding, or when the record contains no evidence

on which the court rationally could have relied." *Corp. Assets, Inc. v. Paloian*,

368 F.3d 761, 767 (7th Cir. 2004).

## STATEMENT OF THE CASE

## I. Course of the Bankruptcy Generally Relevant to the Issue on Appeal, Potential Payment of Claims

1. Debtor, USA Gymnastics, filed a Ch.11 Bankruptcy Petition on

December 5, 2018 (the "Petition Date"), in the Bankruptcy Court (the

"Bankruptcy") due to numerous sexual abuse claims against USA Gymnastics,

from Debtor's employment of Dr. Larry Nassar.[2] [Appx., 277-282]. The

Survivors Committee was appointed on Dec. 19, 2018 [Appx., 273-276].

_____

2 The nature of Larry Nassar's ghastly sexual assaults on young gymnasts is well-established. The heinous acts suffered by Terin, described below, were also suffered by hundreds of other gymnasts, for which crimes Larry Nassar will be in prison for the duration of his life. This Motion does not detail the appalling reach of Nassar's criminality, or the extent to which USA Gymnastics facilitated his crimes via his employment and resulting access to young gymnasts such as Terin. The very filing of the Bankruptcy, the sexual abuse claims process, and number of sexual abuse claimants, all speak to the indisputable fact that these crimes occurred and USA Gymnastics has a degree of liability resulting therefrom. Further details are set forth in various portions of the Appendix. [See., e.g., Appx., 221-252].

3.     On Feb. 25, 2019, the Bankruptcy Court entered the "Bar Date Order", fixing the April 29, 2019 Bar Date to file claims for sexual abuse—60 days after the Bar Date Order, 145 days post-Petition Date. [Appx. 260-272].

4.     On May 17, 2019, the Bankruptcy Court appointed Fred Caruso as Future Claims Representative (the "FCR"). [Appx., 256-259].

5.     On Sept. 26, 2019, the Bankruptcy Court approved an agreed entry between the Debtor and sexual abuse claimant Erin Kauffman, treating Ms. Kauffman's sexual abuse claim filed on June 21, 2019 (53 days after the Bar Date) as timely filed (the "Late Deemed Timely Claim"). [Appx., 253-255].

6.     The Survivors Committee moved to dismiss the Bankruptcy on January 21, 2020 (the "Motion to Dismiss"), which is set for a currently unscheduled hearing to be re-set after the pending Bankruptcy mediation concludes (the "Pending Hearing") [Appx., 102, 103-104, 1].

7.     On Feb. 21, 2020, Debtor filed its "Amended Plan" as well as its "Disclosure Statement" relating thereto, and its Motion to Approve the Disclosure Statement and Plan Confirmation Procedures [Appx., 153-198], to each of which numerous objections have been filed by the Survivors' Committee and hundreds of other sexual abuse claimants (collectively, the "Plan Objections"), set for the Pending Hearing. [See, e.g., Appx., 105-152].

8.     On August 8, 2020, USA Gymnastics and the Survivors Committee requested a settlement conference (the "Settlement Motion"), seeking the Bankruptcy Court to force various insurers of USA Gymnastics and related entities (the "Insurers") to send their respective CEOs to mediation to negotiate amounts the Insurers will pay to fund the plan, which Motion was granted, in part, on September 2, 2020, whereby USA Gymnastics, the Survivors Committee and the insurers were ordered to participate in an as-yet unscheduled mediation with Hon. James M. Carr, Bankruptcy Court Judge (the "Mediation"). [Appx., 63-68, 22-24].

9.     The thrust of the proposed Amended Plan is that an estimated $217,125,000.00 will be paid into a trust (the "Trust")[3] for payment to sexual abuse claimants, of that sum 95.5%, or $206,375,000.00 will be distributed to all timely-filed sexual abuse claims (there are 510 of these claims presently), and 4.95%, or $10,750,000.00 (the "Future Claimant Reserve"), will be made

_____

3 The mechanism at play in the Bankruptcy is to channel all of the sexual abuse claims against USA Gymnastics into Trust, with the Trust funded by the Insurers, so that USA Gymnastics can continue operating. This is a process pioneered in the context of asbestos claims in *In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986), which has since been used in asbestos, sex abuse and other cases with large classes of claimants and potential latent claimants.

available to persons who filed claims after the Bar Date, but within 5 years after effective date of the Trust ("Future Claims"). [Appx., 170-198].

10.    The Amended Plan is preliminary, and wholly contingent upon resolution of the Motion to Dismiss, the Plan Objections, and Mediation.

11.    The Disclosure Statement provides, in relevant part:

Special Considerations If Your Claim Was Filed After the Bar Date. For those seven Claimants who filed their Abuse Claims after the Bar date, the Settlement Election is the only option that allows you to recover. . . **Under the Settlement Election, untimely Abuse Claims will be treated the same as timely Abuse Claims without any requirement that the Claimant seek Bankruptcy Court approval for such treatment**."

[Appx., 171 (emphasis added)]. Per the Amended Plan:

**4.2.5. Late-Filed Abuse Claims.** There are seven (7) Abuse Claims that were filed after the deadline for submitting Abuse Claims in the Case. The Trustee, **in his sole discretion**, may treat such late-filed Abuse Claims as timely or disallowed.

[Appx., 196]. Thus, if the Amended Plan is confirmed and Terin's Claim is allowed, she would be assigned to a subclass of abuse claimants based on where the abuse occurred and automatically receive payment on her Claim, increasing the number of timely claimants from 510 to 511. [Appx., 171a, n.2].

12.    If the Denial Order remains in effect, Terin will be limited to an unknown portion of the Future Claimant Reserve, and, as a Future Claimant, Terin would need to prove her claim to the FCR by a preponderance of the

evidence, and, if allowed by the FCR, the trustee of the Trust Assets would have sole discretion as to payment of Terin's Claim. [Appx., 196, 197].

## II.    Disposition Below as to the Relief Sought by Terin

1.    On July 30, 2020, Terin, by counsel, filed her Motion, to which the Survivors' Committee objected on Aug.19, 2020 (the "Objection"), **the only objection filed to the Motion**, Terin replied on August 24, 2020, (the "Reply"), which were all heard by the Bankruptcy Court on August 26, 2020 (the "Hearing"). During the Hearing the Bankruptcy Court denied the Motion, with a minute entry of: "Disposition: Hearing held. Parties appear telephonically. Creditor Exhibit A [Affidavit of Terin Humphrey] and B [Declaration of Dr. Elig], admitted without objection. Court denies motion." [Appx., 20, 58-62, 69-77, 78-101].

2.    The Bankruptcy Court ruled as follows during the Hearing:

This is a claimant who knew exactly what happened to herself, she just didn't experience the suffering and the damages from it until it was sparked by -- apparently by a childbirth occurrence. **I mean, women have gynecological exams all the time, but somehow having childbirth was the one that triggered it. I don't have any question about her veracity. She's been very truthful about it**. She knew she had a claim, she just didn't know how big her damages were. That's exactly what the argument is. When you say there's no danger of prejudice, we haven't really left this door open because **I can't make these decisions on a whim or on sympathy**. **There has to be bright lines** so that everybody knows. And if I let anybody in

who now claims that they were abused by Nassar years ago, they knew it the whole time, they knew there was a bankruptcy, they knew there was a claims bar date, they were very involved, but they just didn't know what the (indiscernible) emotionally would be, that's no reason to open the door and potentially let anyone in who has -- who can make a likewise argument. So I just think **my bright line rule has to exist.**

[Appx., 47mem, lns. 1-20] (Emphasis added).

## III.   Factual Background

1.    Terin was born on August 14,1986, and has been a member of USA Gymnastics from 1989 through the present. [Appx., 93].

2.    In 2002, at the July 2002 U.S. Classic gymnastics meet in Virginia Beach, VA, while she was fifteen (15) years of age, Terin was sent by her coaches to be examined by USA Gymnastics' doctor Nassar for a hip injury, during which examination Terin was sexually abused by Nassar, via his ungloved digital manipulation of her vagina. During the same tournament, Terin was re-directed by her coaches to Nassar for treatment, and abused by Nassar again in the same fashion. [Appx., 11, 93].

4.    Terin has not filed a claim against Michigan State University, or any other besides the Claim, relating to Nassar's abuse. [Appx., 93].

5.    In 2004, at the age of 18, Terin earned two silver medals in gymnastics at the Olympic Games in Athens, Greece. [Appx., 94].

6.     Terin knew of the Bankruptcy and the Bar Date, but she did not experience symptoms of Nassar's sexual abuse until post-Bar Date. [Id.].

7.     More specifically, Terin became pregnant with her first child in May of 2019, which was born in January, 2020. [Id.]. During the course of her pregnancy, Terin became acutely anxious when anyone touched her stomach. She experienced severe anxiety during pelvic examinations at this time, which escalated at the time of childbirth when she "felt helpless and overwhelmed because people were staring at me (my genitals) and examining me, especially when the male doctor, not my usual doctor, did it." [Id.].

8.     During and after her childbirth, Terin suffered numerous other negative psychological outcomes, including distressing memories and flashbacks to the sexual abuse by Nassar. As the symptoms of her abuse began to manifest Terin first realized that Nassar had sexually abused her. [Id.].

9.     Terin was psychologically examined by Dr. Steven A. Elig, M.D. ("Dr. Elig") on July 18, 2020, and Dr. Elig made the following observations:

> Following the powerful external cue of being genitally examined and manipulated prior to and after childbirth, which resembled and symbolized a developmentally inappropriate sexual experience, Ms. Humphrey reports the following resulting symptoms:
>
> a. Intrusion/reexperiencing - Intrusive distressing memories, flashbacks, and intense psychological distess with marked

physiological reactions upon exposure to cues that symbolize or resemble an aspect of the traumatic events.

b. Avoidance - Efforts to avoid distressing memories, thoughts, feelings, and external reminders of the traumatic events.

c. Negative cognitions - Persistent negative beliefs and expectations about herself and the world, distorted cognitions about the consequences of the traumatic events, persistent negative emotional state, markedly diminished interest and participation in significant activities, feelings of detachment or estrangement from others, and persistent inability to experience positive emotions.

d. Hyperarousal - Irritable behavior and angry outbursts, hypervigilance, exaggerated startle response, problems with concentration, and sleep disturbance.

e. Depression - Depressed mood, markedly diminished interest and pleasure in activities, insomnia, psychomotor agitation, fatigue, feelings of excessive guilt, and diminished ability to concentrate.

These disturbances have caused clinically significant distress and impairment in social, occupational, and other important areas of functioning. Ms. Humphrey reports negative impact on her general sense of life contentment and emotional outlook, intimate relationships, family relationships, friendships, work motivation, and interests and activities.

[Appx., 96-101].   Due to the foregoing symptoms and Dr. Elig's analysis,

Dr. Elig diagnosed Terin with Child Sexual Abuse, Post-Traumatic Stress

Disorder, and Major Depressive Disorder.   [Id.].

10.   As to Posttraumatic Stress Disorder, Dr. Elig states:

The psychiatric diagnosis of Posttraumatic Stress Disorder is based on a pattern of intrusion symptoms, avoidance of stimuli, negative alterations in cognitions and mood, and alterations in arousal and reactivity following exposure to actual or threatened death, serious injury, or sexual violence. For children, sexually violent events may include developmentally inappropriate sexual experiences without physical violence or injury. 1 Ms. Humphrey reports a multitude of these specific symptoms in a clinically valid manner. These **symptoms were not present prior to the visceral reminder of sexual abuse occasioned by genital examination during pregnancy** and childbirth, and they are thematically closely related to the incidents of sexual abuse. Therefore, it is my opinion to a reasonable degree of medical certainty that Ms. Humphrey meets psychiatric criteria for Posttraumatic Stress Disorder **with delayed expression**, as a direct result of her experience of child sexual abuse by Dr. Larry Nassar.

[Appx., 99-100]. As to Major Depressive Disorder, Dr. Elig states:

The psychiatric diagnosis of Major Depressive Disorder is based on a pattern of depressed mood and/or loss of interest or pleasure in almost all activities, accompanied by symptoms such as weight loss, insomnia, psychomotor retardation, fatigue, feelings of worthlessness or excessive guilt, diminished ability to concentrate, and recurrent thoughts of death, suicidal ideation, or suicide attempt. (See American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders, 5th edition, 2013). Ms. Humphrey convincingly describes the initial onset of severe symptoms beginning in January 2020. She had never before experienced similar symptoms. Therefore, it is my opinion to a reasonable degree of medical certainty that Ms. Humphrey meets psychiatric criteria for Major Depressive Disorder, single episode, with anxious distress and peripartum onset, as a direct result of child sexual abuse by Dr. Larry Nassar.

[Appx., 100]. As to Terin's delayed onset of symptoms, Dr. Elig states:

**Delayed symptoms and disclosure of sexual abuse are not uncommon**, and must be understood individually with respect to content, context, and developmental stage. Ms. Humphrey clearly recalled the incident of child sexual abuse during adolescence and early adulthood, but **she did not experience significant psychological symptoms until genital examination during pregnancy and childbirth served as a powerful reminder and precipitated a feeling of recurrence of sexual abuse**. She was then flooded with feelings of vulnerability, helplessness, guilt, defectiveness, and lack of trust. Prior to that time, she had also been in the child sexual abuse, creating a potent loyalty bind. **These factors credibly explain Ms. Humphrey's pattern of delayed symptoms and disclosure from a psychiatric viewpoint.**

[Appx., 100-101].[4]

## SUMMARY OF ARGUMENT

The Bankruptcy Court's authority to pre-empt Virginia's statute of limitations via the Bar Date Order is limited by Terin's right to due process. To afford Terin due process as a latent claimant, the Bankruptcy Court was required to consider all relevant circumstances surrounding Terin's reason for filing her Claim after the Bar Date, and, if such circumstances satisfied the elastic standard of excusable neglect (by balancing the circumstances surrounding Terin's Claim and the reason for its lateness against the impact on the Debtor if the Claim is

---

[4] *See also*, James Hopper, Ph.D. and David Lisak, Ph.D., *Why Rape and Trauma Survivors Have Fragmented and Incomplete Memories*, TIME MAGAZINE, December 9, 2014 (viewable at: https://time.com/3625414/rape-trauma-brain-memory/).

allowed as timely), extend the Bar Date to allow the Claim as timely.   The Bankruptcy Court abused its discretion in denying the Motion because, as evidenced by the Transcript, the Bankruptcy Court applied only the "bright line rule" of the Bar Date, not the excusable neglect standard. This summary adjudication abridged Terin's Constitutionally guaranteed right to due process.

## ARGUMENT:

### I.   Terin's Claim is Timely Under Virginia Law

Virginia law applies to Terin's sexual abuse by Nassar, as follows:

> Every action for injury to the person, whatever the theory of recovery, resulting from sexual abuse occurring during the infancy or incapacity of the person as set forth in subdivision 6 of § 8.01-249 shall be brought within 20 years after the cause of action accrues.
>
> ***
>
> In actions for injury to the person . . . resulting from sexual abuse occurring during the infancy or incapacity of the person, upon the later of the removal of the disability of infancy . . . or when the fact of the injury and its causal connection to the sexual abuse is first communicated to the person by a licensed physician, psychologist, or clinical psychologist.

Va. Code § 8.01-243(D); Va. Code § 8.01-249 (6) (West, 2020). Thus, Terin's claims for sexual abuse by Nassar in July of 2002 are timely under Virginia law, because they are not time-barred (based on the discovery rule) until 20 years from her diagnosis by Dr. Elig in July of 2020, which would be July of

2040, or (based on the removal of her infancy), 20 years from her 18th birthday, which would be August 14, 2024.

## II. Because the Bankruptcy Court has Limited Authority to Preempt Virginia's Statute of Limitations for Sexual Abuse Claims, Due Process Requires Allowance of Terin's Claim as Timely Due to Terin's Excusable Neglect.

Pursuant to Fed. R. Bankr. P. 3003 and 11 U.S.C. §501, Congress has granted some authority to the Bankruptcy Court to pre-empt state laws, such as state statutes of limitations, by allowing Bankruptcy Courts to set a claims bar date, however, that authority is not limitless, and must be construed, where possible, so as not to pre-empt state law.   *In re Fed.-Mogul Glob. Inc.,* 684 F.3d 355, 369 (3d Cir. 2012).   More specifically "Even in instances of express preemption, the presumption in favor of state law applies, requiring us to accept "a plausible alternative reading ... that disfavors preemption." *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005). Fed. R. Bankr. P. 3003(c)(3) has a built-in mechanism for limiting the Bankruptcy Court's ability to utilize a pre-emptive claims bar date to abrogate longer state law statutes of limitations, providing: that "[t]he court shall fix **and for cause shown may extend** the time within which proofs of claim or interest may be filed." (Emphasis added).[5]

---

5 Fed. R. Bankr. P. 9006(b)(1) provides another procedural mechanism by which to extend bankruptcy deadlines in appropriate circumstances, "by

The U.S. Supreme Court in *Pioneer* formulated the standard to establish cause for a late filing under the Bankruptcy Code, via the doctrine of excusable neglect. *Pioneer*, 507 U.S. 380 at 395. *Pioneer* states that excusable neglect is an "elastic concept", requiring analysis of "all relevant circumstances surrounding the party's omission" and a balancing of the circumstances of the late filing with the impact on the debtor—more precisely a weighing of the following factors: [1] the danger of prejudice to the debtor; [2] the length of the delay and its potential impact on judicial proceedings; [3] the reason for the delay, including whether it was within the reasonable control of the movant; and [4] whether the movant acted in good faith. *Pioneer*, 507 U.S. 380 at 395. *See also In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004) (applying the *Pioneer* standard to a late-filed claim to satisfy due process). *Pioneer* explained "by empowering the courts to accept late filings where the failure to act was the result of excusable neglect, Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by

---

motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." The excusable neglect standard set forth in *Pioneer Investment Srvcs. v. Brunswick Assoc. Ltd. P'ship,* 507 U.S. 380, 392-395 (1993), applies regardless of whether relief is sought under Fed. R. Bankr. P. 3003(c)(3) or Fed. R. Bankr. P. 9006(b)(1).

inadvertence, mistake, or carelessness, **as well as by intervening circumstances beyond the party's control**." *Id.* at 388. (Emphasis added).

Further, based on Fed R. Bankr. P. 3003(c)(3) and cases applying it, The Bankruptcy Court does not just have the *ability* to deem Terin's late-filed Claims as timely filed if excusable neglect is established, it ***must*** treat such claims timely for the Bar Date Order to provide due process concerns for latent claimants. *In re Future Energy Holdings Corp* 949 F.3d 806, 823 (3rd Cir. 2020).

The Third Circuit's holding in *In re Future Energy* is particularly relevant here.   In the bankruptcy court case from which that holding derives, the Chapter 11 bankruptcy of an entity with liability for certain asbestos claims, objection was filed to a chapter 11 plan's claims bar date by, *inter alia*, latent asbestos personal injury claimants (those with asbestos exposure occurring prior to the petition date, but with no expression of symptoms until after the claims bar date), the objection was overruled, the plan confirmed, the bar date approved and all post-bar date claims discharged, all of which was affirmed by the district court. *In re Future Energy*, 949 F.3d 806, 815. The Third Circuit Court of Appeals affirmed, but in so doing agreed that latent claims did, in fact, have a property interest in their ability to pursue claims against the debtor, which was protected by the Due Process Clause. *Id.* Thus, the latent claimants

were entitled to due process prior to revocation of their property right in their latent claims. *Id.* Due process concerns were only satisfied by the combination of <u>both</u>: (i) notice of the claims bar date received by the holders of latent claims <u>AND</u>; (ii) the **opportunity to have late claims filed after the bar date reinstated for "cause shown"**. *Id.* at 822 (Emphasis added).   Thus, under the Fourteenth Amendment to the United States Constitution and cases applying it in precisely analogous circumstances, the Bankruptcy Court's authority to pre-empt Terin's Virginia-state property right to assert a Claim for the damages arising for her sexual abuse is limited by Terin's right to due process via assessment of her Claim for excusable neglect. *Id.* More specifically:

> [T]he **Bankruptcy Court <u>must</u> accept late-filed proofs of claim** under Federal Rule of Bankruptcy 3003(c)(3) for "cause shown." Fed. R. Bankr. P. 3003(c)(3). That "flexible" standard is met when the "danger of prejudice to the debtor" is low; the claimant shows good "reason for the delay"; and the "length of the delay" does not have outsize "impact on [the] judicial proceedings." *Pioneer Inv. Servs.*, 507 U.S. at 389, 395, 113 S.Ct. 1489 (applying "excusable neglect" standard of Fed. R. Bankr. P. 9006 to Rule 3003(c)(3)). Our review of these three factors convinces us that deserving latent claimants will have adequate opportunity to obtain reinstatement through Rule 3003(c)(3) motions and that this path to relief is not, as Appellants assert, categorically incapable of affording due process to latent claimants.

*Id.* (Emphasis added). There is no practical difference between a latent asbestos claimant (claimant who was exposed to asbestos pre-bar date and later

develops mesothelioma post-bar date), and a latent sexual abuse claimant such as Terin, who suffered sexual abuse at the incredibly tender age of fifteen (15) years old, pre-Bar Date, but did not express the psychological symptoms of that abuse until years later, post-Bar Date.[6]  Whether it's a latent claim for mesothelioma arising from exposure to asbestos, or a latent claim for damages for sexual abuse based on delayed expression of symptoms of Child Sexual Abuse, Post-Traumatic Stress Disorder, and Major Depressive Disorder, "fundamental principals of due process" still apply to Terin's Claim in the Bankruptcy, which require that she be afforded an opportunity to establish excusable neglect under the *Pioneer* standard. *Id.* at *813.

The Third Circuit in *Future Energy* determined that the bar date in that case afforded Constitutional due process under the 14th amendment to latent claimants only based on the assurance of, and requirement that, **latent**

_____

6  This is the very reason why the statute of limitations for sex abuse claims in Virginia is tolled until the later of a minor reaching the age of majority, or when such abuse is communicated to the victim by a licensed physician, which, in turn, is the exact same reason why statutes of limitations for claims for mesothelioma arising from asbestos exposure have also been tolled. *Cf.* Va. Code § 8.01-249, subsection (4) (sex abuse claims statute of limitations does not begin to run until later of discovery via communication by a physician or age of majority); and subsection (6) of the same statute (statute of limitations for asbestos claims does not begin until diagnosis of injury or disease is communicated by a physician).

**claimants have the opportunity to be fully and fairly heard by affording them the opportunity to present evidence to establish excusable neglect**, and, if the *Pioneer* factors were established, **that Due Process of law required extension of the bar date for such latent claims.** *Id.*   In other words, inherent in the Bankruptcy Court's authority to implement the Bar Date Order is a requirement that it must afford due process to latent claimants such as Terin, who could not file before the Bar Date, by fully and fairly hearing claims for excusable neglect and applying the *Pioneer* standard to the facts of the case—the plain statements contained in the Transcript demonstrate that the Bankruptcy Court did not do that, so the Denial Order must be reversed.

### III.   The Circumstances of Terin's late-filed Claim Satisfy the Excusable Neglect Standard under *Pioneer.*

Review of the Motion, the Objection, the Reply and the Transcript demonstrate that Terin conclusively established excusable neglect under the *Pioneer* standard due to: **(1)** lack of prejudice to the Debtor (evidenced by Debtor's lack of objection to the Motion); **(2)(a)** practically no delay from when Terin was diagnosed with her symptoms (the triggering event under Virginia law) to when she filed her Claim; **(2)(b)** no impact on the judicial proceedings, because the mechanics of USA Gymnastics reorganization plan,

the amount that will be used to fund such a plan, and whether the Bankruptcy will even survive dismissal remain completely uncertain due to facts wholly unrelated to Terin's Claim; and **(3)/(4)** Terin's reason for the delay and demonstration of her good faith is evident based on her clinically diagnosed delayed expression of symptoms triggered by her post-Bar Date pregnancy and confirmed by her post-Bar Date diagnosis, in conjunction with the immediate filing of her claim subsequent to her diagnosis.

### A. Terin satisfies *Pioneer* Factors 1 and 2 because there is no danger of prejudice to the Debtor and the length of the delay has no impact on the Bankruptcy.

"The first *Pioneer* factor, prejudice, does not refer to an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on the facts in evidence." *In re New Century TRS Holdings, Inc.* 2014 WL 2198247 (Bankr. D. Del. May 23, 2014) (citing *Manus Corp. v. NRG Energy, Inc. (In re O'Brien Envtl Energy, Inc.),* 188 F.3d 116, 127 (3d Cir.1999)).

> When addressing the issue of prejudice under the *Pioneer* test, the *O'Brien* Court discussed several relevant considerations, including: (i) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (ii) whether payment of the claim would force the return of amounts already paid out under the confirmed plan or affect the distribution to creditors; (iii) whether payment of the claim would jeopardize the success of the debtor's reorganization; (iv) whether allowance of the claim would adversely impact the debtor; and (v) whether

> allowance of the claim would open the floodgates to other late claims.

*Id.* Thus, although the Claim was filed on July 30, 2020, 458 days after the Bar Date, in light of: (i) the unresolved status of the Amended Plan; (ii) the ambiguity of same as it relates to untimely abuse claims; (iii) the uncertainty inherent in the Mediation, Motion to Dismiss, and Plan Objections; and (iv) assuming that a plan is ultimately approved, the overall limited impact of allowing Terin's Claim as timely in addition to the 510 other timely claims, each of the first two *Pioneer* factors support the Motion.

Further, of the five *O'Brien* subfactors deemed relevant under the first *Pioneer* factor, the facts of Terin's Claim establish excusable neglect, because: (i) USA Gymnastics was not surprised or caught unaware by the assertion of the Claim—it understands the existence, and the Disclosure Statement specifically contemplates treatment of, untimely Abuse Claims; (ii) there have been no payments made to any claimants in the Bankruptcy[7] so nothing would need to be returned—although there would be a slight impact to the payment made to the 510 other timely and deemed-timely claims, that impact, in light

---

[7] Other than the administrative claims of professionals employed in the Bankruptcy, who have sought, and had approved, attorney's fees and expenses in excess of $13,263,000.00 through September, 2020, with millions more incurred and requested since.

of the hundreds of millions of dollars paid by the Insurers for sexual abuse claims, is negligible; (iii) payment of the Claim would not jeopardize the success of USA Gymnastics' reorganization, because whether that reorganization is successful depends on the Mediation and resolution of the Plan Objections and Motion to Dismiss, not whether there are 510 or 511 timely claims; (iv) allowance of the Claim would not adversely impact USA Gymnastics because only the Insurer funds potentially realized via Mediation will be used to pay Terin's Claim; and (v) there are no facts to support the belief that allowing Terin's Claim as timely would open the floodgates to other late claims, as it is unlikely that there are other latent sexual abuse claimants with psychological symptoms similar to Terin's that have not yet filed claims. Further, under the Due Process Clause and *Future Energy*, any such claim must be considered on its own merits, regardless of the treatment of Terin's Claim.

Further, it must be emphasized that impact to the **Debtor, USA Gymnastics,** on the treatment of Terin's Claim as timely filed is the central inquiry, not impact to other parties. In a similar situation, where, as of the date of Debtor's receipt of notice of the late claim the reorganization plan was unconfirmed, being negotiated, and the claim was expected, the Fifth Circuit Court of Appeals has stated:

> Under *Pioneer,* the central inquiry is whether the *debtor* will be prejudiced. We note that Greyhound's reorganization plan was negotiated and approved *after* Greyhound had notice of these claims. **This is not a situation where the debtor's plan was formulated, negotiated, and confirmed before notice was given of a substantial late claim** . . . **Quite the contrary, these late filed claims were clearly expected by the debtor**.

*In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 737-738 (5th Cir. 1995) (italicized emphasis in original, bold emphasis added, internal citations omitted). Here, as in *Eagle Bus*, late claims were not just expected, 7 of them were specifically referenced in the Amended Plan, and one of those has already been deemed timely filed. [Appx., 204, 407-409].   Thus, there is essentially no impact on Debtor due to the delay in Terin's filing of the Claim, and thus no prejudice to Debtor relating to same. This is further evidenced by the fact that USA Gymnastics did not file an objection to the Motion, and its counsel stated during the hearing, after undersigned counsel explained all the reasons and facts establishing Terin's satisfaction of the *Pioneer* excusable neglect standard, when asked whether it had a comment on Debtor's behalf as to the Motion, she responded "No, Your Honor. **We're not taking a position with respect to this particular motion**." [Appx., 40, lns. 1-4] (Emphasis added).

### B. Terin satisfies *Pioneer* Factors 3 and 4 because her delay was the result of a medically-recognized phenomenon, not in her reasonable control, and she acted in good faith upon discovery.

Terin did not begin to realize that she had a claim in the Bankruptcy until the nature of her medical examinations in the late stages of her pregnancy during the end of 2019 and early 2020 triggered negative psychological effects from the abuse she suffered at the hands of Nassar some 18 years prior. Terin's realizations did not fully crystallize until June of 2020, and Elig's Declaration confirming Terin's abuse, Post-Traumatic Stress Disorder, Major Depressive Disorder and delayed expression thereof, was not completed until July 18, 2020—two days prior to the Claim being filed. As Dr. Elig notes in his Declaration, Terin's expression of symptoms of Sexual Abuse, Post-Traumatic Stress Disorder and Major Depressive Disorder did not occur until the birth of her child in 2020, and Terin's presentation of symptoms were clinically-diagnosed as delayed expression—which is the reason for Terin's late-filed Claim. [Appx. 96-101].

Terin's circumstances are similar to that of the movant in *In re SunCruz Casinos, LLC*, 377 B.R. 741 (Bankr. S.D. Fla. 2007). The *SunTrust* court, holding in favor of allowing a late-filed claim for a latent injury, determined:

> [Claimant testified that] he did not file a claim before the bar date because **he was not aware that he had a claim under the Bankruptcy Code.** He realized of course that he was injured during the 2002 incident, but the pain had subsided and he no longer thought he had any reason to file a claim. . . .I find that the facts in

this case more closely resemble those in *Needy*. . . . The claimant Needy was put on notice that he had suffered an injury after consulting with several of physicians but the information he received from them was insufficient to suggest to him to file a claim against his employer for causing him injury, in light of the fact that he was not having any pain that he could connect to the performance of his job. . . . The court noted that at the time, he was not necessarily suffering from any illness causally related to his exposure to chemicals. It was only when he progressed from headaches and eye problems to total blindness that the court found that he should have been aware of his injury and its relation to his employment. . . . It is understandable that [claimant]would not be able to draw a connection between his post–2005 accident pain and the accident in 2002. . . . I am required to **balance the important finality that bar dates and other statutory limitations provide with fairness and justice for those who seek recovery**. Certainly the Debtor (or at least Wells Fargo Foothill) would be prejudiced by allowing a late filed claim which it would otherwise not have to defend against, but the Court finds that the prejudice is not so great as to outweigh the rights of [claimant] to pursue a claim which I find he honestly **did not believe he had until well after the applicable bar date** . . . I find that [claimant]'s delay in filing the claim was not unreasonable and that [claimant]has acted in good faith in all matters relating to the filing of the claim. I am convinced that [claimant] did not knowingly delay in filing a claim and that he promptly filed one once he believed he had a claim. ... I accordingly find that [claimant]'s actions have been taken in good faith.   In sum, I find that in applying the factors set forth in *Pioneer* to the facts in this case, those factors weigh in favor of a finding that [claimant]'s failure to file a claim before the applicable bar date was the result of excusable neglect, and that [claimant's claim] should be allowed. . .

*Id.* at 746-748 (citing *Needy v. CSX Transp., Inc.,* 2000 WL 34249112, 2000 U.S. Dist. LEXIS 22603 (W.D. Ky. Mar 21, 2000)).   In contrast, the Bankruptcy Court undertook no "balancing" of the circumstances

surrounding Terin's Claim in comparison to the impact that allowance of such claim as timely filed would have on the Bankruptcy. [Appx., p. 47]. Instead, the Bankruptcy Court expressed generalized concerns about finality (the preference for a "bright line rule") and a misunderstanding about how the psychological effect of child-birth could trigger the expression of previously-delayed symptoms of sexual abuse, which analysis did not satisfy Terin's due process right to an assessment of excusable neglect. [Id.] Terin did not, in fact "know she had a claim" until post-Bar Date because she had suffered no symptoms of the sort that establish a diagnosis for abuse. [*Cf.*, Appx., 47, *with* Appx. 96-101].   The Virginia legislature certainly understood this, and the Bankruptcy Court does not have the authority to override Terin's due process rights by ignoring the medical fact of delayed expression of symptoms, or to opine that a pregnancy is no different from a "gynecological exam" in triggering delayed abuse symptoms. [*Cf.*, Appx.,47, *with* Va. Code § 8.01-249].

As to good faith, "an honest oversight that is not part of a sinister, well-conceived plan to frustrate" the opponent will not bar a finding of excusable neglect. *Kimberg v. Univ. of Scranton,* 411 Fed.Appx. 473, 478 (3d Cir. 2010).   Terin's actions are in good faith because her failure to file

the Claim prior to the Bar Date was not part of any plan or deliberate action—she simply did not realize that she had a claim until her pregnancy and birth of her first child triggered negative symptoms from Nassar's abuse, and the nature of her prior abuse was only elucidated after psychological examination in July of 2020 [Appx. 93-101]. The Bankruptcy Court found Terin's affidavit to be "truthful" and did not dispute its "veracity". [Appx. 47]. Acknowledgment of such good faith, in conjunction with lack of prejudice to the Debtor or impact on the Bankruptcy and the failure to balance the two, establish Terin's excusable neglect for her late Claim and the resulting error of the Denial Order.

IV.   **The Bankruptcy Court's Decision Constituted Clear Error Because its Decision was Based Solely on the Preference for a "bright line rule" and Thus did not Provide Terin Due Process Prior to Abrogating Her Latent, yet Timely under Virginia State Law, Claim for Sexual Abuse.**

In the instant matter, it is exceedingly relevant that Terins' Claim was timely under Virginia law, and, but for the Bankruptcy, would be permitted in its entirety, unrestricted by any limited recovery imposed by potential bankruptcy plans.   In a very similarly situated case, *In re Diocese of Buffalo, N.Y.*, 620 B.R. 445 (Bank. W.D. N.Y.) (2020), relating to a chapter 11 bankruptcy triggered by sexual abuse claims against the

Catholic church, in resolving objections to the debtor's procedure for establishing a claims bar date, the court specifically identified the "problem" inherent in any claims bar date predating New York's statute of limitations, and, because of that problem, set a bar date coterminous with New York's statute of limitations.   *Id.* at 452.

In this Bankruptcy, by contrast, the Bar Date was set, relative to other important milestones in the Bankruptcy that have not yet occurred, almost immediately after the Petition Date. [Appx., 260-272]. Objections were filed to the motion precipitating the Bar Date Order, which were overruled because the Bar Date Order was conclusively found to be "in the best interests of the Debtor, its estate, and creditors." [Id.].   However, having instituted a Bar Date that pre-empts state statutes of limitations such as Virginia's by many years, the Bankruptcy Court was required to analyze the Motion in the context of the elastic standard excusable neglect under *Pioneer* standard, which it failed to do.

### V.    The Survivors' Committee's Objection to the Motion Does Not Refute Terin's Establishment of Excusable Neglect.

The primary thrust of the Survivors' Committee's Objection to the Motion is that, because Terin was aware of the Bar Date, the Motion must be denied. The Objection, however, fails to cite any case law in support of this

contention[8], and fails to address, or even acknowledge, Terin's medically-diagnosed condition of delayed expression of symptoms, which prevented her from realizing her Claim until after the Bar Date.

Although the Objection cites the same 4-factor *Pioneer* standard as the Motion for determining whether a claimant has established such that a late-filed claim should be timely allowed, the Objection fails to provide any legal or evidentiary support as to why Terin's Claim does not meet this standard. More specifically, **the Objection fails to [1] describe any specific prejudice to the Debtor, or to the Survivor's Committee, or [2] to specify any impact on the judicial proceedings**. The Survivors Committee concede in the Objection that "mediation is at an impasse" [Appx., 71], "the Survivors' Committee opposes the Plan" [Appx., 72], and that hearings on the Disclosure Statement, the Survivors Committee's objection to the Plan remain pending [Appx., 71]. No specific prejudice is described in the Objection, and the holdings from the cases cited in the Objection where the late-file claims were not deemed timely

---

[8] The Objection erroneously states that Claimant's awareness of the Bar Date is "fatal" to the Motion [Appx., 73]—the Objection completely fails to address those cases, cited in the Motion and herein, whereby claimants that knew of the bar date, but, similarly to Terin, were not aware of injuries providing a basis for filing a claim, were permitted to have their late-filed claims deemed timely filed.

filed are factually distinguishable from Terin's Claim.[9]   With respect to "[3] the reason for the delay, including whether it was within the reasonable control of the movant; and [4] whether the movant acted in good faith", the Objection, similar to the Bankruptcy Court, does not dispute Terin's good faith delay.

## CONCLUSION:

Because the Bankruptcy Court did not apply the *Pioneer* test to Terin's Motion and her Claim, and because Terin has conclusively established that the balance of circumstances surrounding the lateness of her Claim, which was immediately filed once that latent Claim was confirmed, measured against the total lack of prejudice to the Debtor and minimal impact on the Bankruptcy, the Denial Order must be reversed and the Motion granted. Thus, Terin petitions the Court for an order: (1) overturning the Denial Order; (2) granting the Motion; and (3) treating Terin's Claim timely filed in the Bankruptcy.

---

[9]In *Kmart Corp.*, 381 F.3d at 713, the 7th Cir. Court of Appeals affirmed the court below, whom, after conducting the requisite *Pioneer* analysis, barred a claim as timely where claimant knew of the bar, and her claim, yet, due to the alleged mistake of a clerk, filed one day after the bar date. In *In Re Nat'ls Steel Corp.*, 316 B.R. 510, 515 (Bankr. N.D. Ill. 2004) a sophisticated corporate entity, and majority owner of debtor's stock was fully aware of the claims bar date, and was heavily involved in Chapter 11 case from its inception, was not permitted to file untimely proof of claim on excusable neglect theory.

Respectfully submitted,

MULVEY LAW LLC

By:___/s/ Joseph L. Mulvey_____
        Joseph L. Mulvey (#30052-49)
        MULVEY LAW LLC
        133 W. Market St., No. 274
        Indianapolis, IN   46204
        (317) 721-1339
        joseph@mulveylawllc.com

## CERTIFICATE OF PAGE LIMITATION

I hereby certify, pursuant to Fed. R. Bankr. P. 8015, that this brief contains 1-inch margins, was written in the Calisto MT font, size 14 point, which is a proportionally-spaced, Roman-style, serif font, and, exclusive of the cover page, table of contents, table of citations, certificates of counsel, signature block, and proof of service, this brief does not exceed thirty (30) pages.

/s/ Joseph L. Mulvey
Joseph L. Mulvey

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all counsel of record through the Court's Electronic Case Filing System.

/s/ Joseph L. Mulvey
Joseph L. Mulvey