UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERIN HUMPHREY, ) <br> ) <br> Appellant, ) <br> ) <br> v. ) <br> ) <br> USA GYMNASTICS, ) <br> ) <br> Appellee. ) <br> _____) <br> ) <br> TORT CLAIMANTS COMMITTEE, ) <br> ) <br> Interested Party. ) | No. 1:20-cv-02522-SEB-MG |

**ORDER ON BANKRUPTCY APPEAL**

This is an appeal from a final order of the United States Bankruptcy Court for the Southern District of Indiana denying Appellant Terin Humphrey's Motion to Allow Late Filed Claim to be Treated as Timely Filed. The bar date to file claims against the above-captioned debtor, USA Gymnastics, was April 29, 2019. On July 30, 2020, Appellant filed a belated claim followed by a motion to treat her late-filed claim as timely. On August 26, 2020, the Bankruptcy Court heard and denied Appellant's motion. Appellant has now appealed that ruling.[1] For the reasons explicated below, the Bankruptcy Court's judgment is <u>AFFIRMED.</u>

**Factual Background**

---

[1] We granted Child USA's motion for leave to participate as *Amicus Curiae* [Dkt. 18] in support of Appellant's bankruptcy appeal [Dkt. 19].

1

*Background of Appellant's Claim*

Terin Humphrey ("Appellant") was born on August 14, 1986 and was a member of USA Gymnastics (USAG) since 1989 to the present. Dkt. 8-2 at 93.[2] Appellant enjoyed a successful gymnastics career with USAG, including having won two silver medals in the sport at the 2004 Olympic Games in Athens, Greece. *Id.* at 94. Prior to her participation in the Olympics, Appellant was sent by her coaches to be examined by USAG's doctor Larry Nassar for a hip injury she had incurred during the July 2002 U.S. Classic Gymnastics Meet in Virginia Beach, Virginia. *Id.* During this examination, Appellant was sexually abused by Dr. Nassar via an ungloved digital manipulation of her vagina. *Id.* She was abused again in the same fashion on a separate occasion during the meet, each encounter lasting approximately fifteen minutes. *Id.* at 93. Appellant was fifteen years of age. *Id.*

Appellant stipulates that she knew of the pendency of the bankruptcy action as well as the bar date for the filing of claims. Her knowledge and awareness stemmed, at least in part, from her role on the Debtor's Athletes' Council from 2009 to approximately 2019. The Council's purpose is to "share the concerns of athletes with representatives from USA Gymnastics and advocate on behalf of the athletes they serve." *See* Dkt. 6 at 17.[3] Appellant does not dispute that she knew of the bankruptcy and the claims date

---

[2] Citations to Dkt. 8-2 and Dkt.14-1 reference the CM/ECF pagination numbers in the appendices attached to Appellant's and Appellee's briefs under this cause number.

[3] Appellee highlights the importance of Appellant's position and the knowledge she would have possessed by virtue of that position during the relevant period when the Nassar investigation was unfolding. Dkt. 6 at 8. Appellee specifically notes that Appellant "had a unique position in USA Gymnastics to understand the history of what Mr. Nassar had done and the impact that other

deadline. Rather, she maintains that she did not experience any physical and emotional effects of Larry Nassar's victimization of her until she became pregnant with her first child in May of 2019, well past the bar date. Dkt. 8-2 at 94. Throughout her pregnancy, from May 2019 through January 2020, Appellant recounts having experienced severe anxiety whenever she was touched on her stomach as well as during pregnancy-related pelvic examinations. Her anxiety was heightened whenever a male doctor examined her. *Id.* During childbirth and thereafter up to the present, Appellant says she has suffered from distressing memories and flashbacks of the sexual abuse by Dr. Nassar. *Id.* She pegs her initial recognition of these acts as sexual abuse to the beginning of her pregnancy. *Id.*

      Dr. Steven A. Elig conducted an independent medical psychiatric evaluation of Appellant on July 18, 2020 on the basis of which he prepared a report detailing his findings and opinions. *Id.* at 96–97. Dr. Elig observed that Appellant was experiencing the following symptoms: intrusion / reexperiencing distressing memories, avoidance, negative distorted cognitions about herself and the world, hyperarousal, and depression. *Id.* at 98. Based on this evaluation, Dr. Elig diagnosed Appellant with the following DSM-V Diagnoses: Child Sexual Abuse (T76.22D), Posttraumatic Stress Disorder, with delayed expression (F43.10), and Major Depressive Disorder (F32.2). *Id.* at 98–99. Regarding Appellant's delayed disclosure of the abuse, Dr. Elig opined that:

---

survivors said his so-called treatments gave rise to." *Id.* at 17. Accordingly, they argue, there "can be no realistic question that Ms. Humphrey knew about the allegations made against Mr. Nassar, knew what athletes were saying about what these treatments actually were, which was abuse, and that it had a[n] impact on their lives." *Id.* at 17–18.

> Delayed symptoms and disclosure of sexual abuse are not uncommon, and must be understood individually with respect to content, context, and developmental stage. Ms. Humphrey clearly recalled the incident of child sexual abuse during adolescence and early adulthood, but she did not experience significant psychological symptoms until genital examination during pregnancy and childbirth served as a powerful reminder and precipitated a feeling of recurrence of sexual abuse. She was then flooded with feelings of vulnerability, helplessness, guilt, defectiveness, and lack of trust. Prior to that time, she had also been in the child sexual abuse, creating a potent loyalty bind. These factors credibly explain Ms. Humphrey's pattern of delayed symptoms and disclosure from a psychiatric viewpoint.

*Id.* at 100–01.

*Background of Current Bankruptcy Proceedings*

USA Gymnastics ("Debtor") filed a Chapter 11 Bankruptcy Petition on December 5, 2018, in the United States Bankruptcy Court for the Southern District of Indiana due to the high number of sexual abuse claims arising from Debtor's employment of Dr. Larry Nassar. *Id.* at 277–83. The nature of Dr. Larry Nassar's sexual assaults on hundreds of young gymnasts is well-documented in the bankruptcy record, the tragic details of which we do not reiterate here. An Additional Tort Claimants Committee of Sexual Abuse Survivors ("Survivors' Committee") was appointed by the United States Trustee on December 19, 2018 to represent the interests of sexual abuse survivors who asserted claims against USA Gymnastics. *Id.* at 274–77. The Bankruptcy Court set April 29, 2019 as the final day for claimants, including sexual abuse claimants, to file proofs of claim. Dkt. 14-1 at 90. On May 17, 2019, the Bankruptcy Court appointed Fred Caruso to serve as Future Claims Representative. Dkt. 8-2 at 257–60. Debtor distributed the notice of the bar date to more than 1,300 individuals, including e-mail notice to more than 360,000 e-mail addresses for current and former USA Gymnastics members. Dkt. 14-1 at 90–91.

Ultimately, more than five hundred individuals filed separate claims based on allegations of sexual abuse against them by Dr. Nassar. *Id.*

Following the bar date for claims to be filed, mediation was undertaken in an attempt to resolve the sexual abuse claims against the Debtor. Participants in the mediation process included the Survivors' Committee, counsel for hundreds of sexual abuse claimants, the Debtor, the Debtor's insurers, the Future Claims Representative, and the United States Olympic and Paralympic Committee and its insurers. Dkt. 5-2 at 203. On July 30, 2020—fifteen months after the bar date—Appellant filed her claim along with a motion to treat her late-filed claim as timely. Dkt. 14-1 at 234–50. The Survivors' Committee opposed the motion. *See* Dkt. 6 at 16. The Bankruptcy Court denied Appellant's motion at a hearing on August 26, 2020. *Id.* at 24.

The issue before us in this appeal is whether the Bankruptcy Court violated Appellant's due process rights in denying her motion to treat her late-filed claim as timely based on an insufficiency of evidence establishing excusable neglect.

## Legal Analysis

### I.   Standard of Review

The District Court reviews a final judgment of the United States Bankruptcy Court for the Southern District of Indiana based on Title 28 U.S.C. § 158(a)(1). Our review of the legal conclusions reached by the Bankruptcy Court is *de novo*. *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010). The Bankruptcy Court's findings of fact are reviewed for clear error. *Id.* "If the trial court's account of the evidence is plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it

would have weighed the evidence differently as trier of fact." *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir.1992) (citing *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 309 (7th Cir.1988)).

A "bankruptcy court's determination of excusable neglect is given more deference—it is reviewed for abuse of discretion*." Langel v. Kmart Corp.*, No. 03 C 7091, 2004 WL 756607, at *1 (N.D. Ill. Feb. 27, 2004) (citing *Matter of Singson*, 41 F.3d 316, 320 (7th Cir. 1994)). In general, "a court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004) (citing *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004)).

## II. Discussion

Appellant first contends that the timeliness of her claim should be determined based on the appropriate state statute of limitations, to wit, Virginia, rather than the bar date. Because the Virginia statute of limitations had not expired when she sought to file her claim, her cause of action remained viable, the bar date notwithstanding. However, if the bar date controls, Appellant's alternative theory is that the Bankruptcy Court failed to properly weigh the requisite factors in determining that Appellant had not established excusable neglect. We address these arguments in turn below.

### A. Virginia Statute of Limitations

Appellant contends that her claim was timely under Virginia law and that the Bankruptcy Court lacked the constitutional authority to pre-empt Virginia's statute of

limitations, which provides that "[e]very action for injury to the person, whatever the theory of recovery, resulting from sexual abuse occurring during the infancy or incapacity of the person as set forth in subdivision 6 of § 8.01-249 shall be brought within 20 years after the cause of action accrues." VA. CODE ANN. § 8.01-243(D) (West 2020). Virginia designates the accrual of a cause of action for injuries resulting from sexual abuse that occurred during either the infancy or incapacity of the person "upon the later of the removal of the disability of infancy or incapacity . . . or when the fact of the injury and its causal connection to the sexual abuse is first communicated to the person by a licensed physician, psychologist, or clinical psychologist." VA. CODE ANN. § 8.01-249(6) (West 2021).

Thus, Appellant argues, her claim would not be time-barred under Virginia law until twenty years from her July of 2020 diagnosis by Dr. Elig (that is, until July of 2040), or twenty years from her eighteenth birthday (that is, until August 14, 2024). Appellant concedes that Congress has authorized bankruptcy courts to pre-empt certain state laws, such as state statutes of limitation, by allowing bankruptcy courts to set a claims bar date pursuant to Federal Rule 3003 of Bankruptcy Procedure and 11 U.S.C. § 501. However, she maintains that a presumption exists in favor of state law which serves to limit the Bankruptcy Court's authority to deny a claim based on the bar date when the bar date shortens the time to file vis-à-vis the applicable state statute of limitations.[4]

---

[4] Child USA, appearing here as *Amicus Curiae*, takes Appellant's position one step further by arguing that bankruptcy bar dates that "blindly nullify" state statutes of limitation for child sex abuse, such as the one here, violate the principles of federalism because the Tenth Amendment of the United States Constitution reserves to states the authority and power to legislate state

Appellant's theories lack any foundation in controlling case law. We begin by noting that Article 1, § 8, cl.4 of the Constitution explicitly delegates to Congress the authority to establish "uniform Laws on the subject of Bankruptcies throughout the United States." Federal Rule 3003 of Bankruptcy Procedure reflects that grant of power by recognizing that "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Appellant cites and our research disclosed no case law supporting its theory that the Bankruptcy Court's discretion to set the bar date is tethered to or dependent on a state's limitations period.

We agree with Appellee that tying state statutes of limitation to bankruptcy bar dates would be unworkable in that the efficient conduct of the bankruptcy system cannot be dependent on the longest possible time period allowed under a state's statute of limitations. Chapter 11 bankruptcy proceedings, especially cases of the magnitude of the one before us here, simply cannot be held open for a period of twenty or more years, as

---

statutes of limitation for child sexual abuse crimes and torts. Child USA alleges that Chapter 11 bankruptcy procedure may not preempt Virginia law establishing the statute of limitations relevant to the instant case.  Further, it argues that the denial of a claim in a federal bankruptcy proceeding as untimely where the claimant has a live claim under the relevant state statute of limitations amounts to an unconstitutional violation of the claimant's due process rights. Child USA insists that it is possible to comply with federal bankruptcy law while honoring the state law in this case, arguing that the bankruptcy court need only set the bar date for bankruptcy filings as the date that creditors' claims for child sex abuse will expire under the Virginia state law.

      Appellee argues that the arguments raised in Child USA's *Amicus* brief should not be considered because they were not raised or considered in the Bankruptcy Court. We note that the preemption arguments raised by Child USA were raised by Appellant in the original proceeding and have been considered in our review. However, Child USA's focus on the policy behind United States bankruptcy proceedings and the overarching goal that only "honest debtors" should be eligible to utilize the federal bankruptcy system has not been considered or discussed because this argument was not raised in the Bankruptcy Court. We deem these policy-based arguments as not relevant to our review of the Bankruptcy Court's ultimate decision in this case.

8

would occur under the Virginia statute of limitations. We share the view of the Bankruptcy Court for the Northern District of New York which reached a similar conclusion in a Chapter 11 bankruptcy proceeding, finding that "[b]ankruptcy courts maintain broad discretion to set claims bar dates irrespective of state statutes of limitation." *In re Roman Catholic Diocese of Syracuse, New York*, 628 B.R. 571, 575 (Bankr. N.D.N.Y. 2021). The bar date set by the Bankruptcy Court in our case reflects a constitutionally permissible decision and exercise of authority and, as such, does not infringe upon Appellant's due process rights. We thus find no basis on which to set aside or revise the enforcement of the bar date by the Bankruptcy Court.

### B.  The Bankruptcy Court's Denial of Excusable Neglect

Appellant next argues that the Bankruptcy Court erred in denying her motion based on the finding that there was an insufficient showing of excusable neglect. Appellant concedes that she filed her proof of claim well after the bar date. Even so, pursuant to Federal Rule 9006(b)(1) of Bankruptcy Procedure, a motion for a claim made after the expiration of the specified bar date may be allowed where the failure to file was due to excusable neglect. In determining whether a sufficient showing of excusable neglect has been made, a court is directed to consider "all relevant circumstances," including the following factors: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993).

Appellant contests the Bankruptcy Court's application of a "bright line rule" based on the bar date, rather than conducting the required analysis of the excusable neglect factors. However, this challenge mischaracterizes the Bankruptcy Court's determination in our view. Based on the record before us, while Appellant clearly disagrees with the Bankruptcy Court's application of the *Pioneer* factors, the factors were neither ignored nor misconstrued in favor of a "bright line rule" analysis. Upon careful review, we find that the Bankruptcy Court applied the appropriate standard and did not abuse its discretion in determining that Appellant had failed to establish that her late filing was the result of excusable neglect.

### i. Prejudice to the Debtor

Appellant maintains that no prejudice would befall the Debtor if the filing of her belated claim were deemed excusable and thus allowable, because the only objection interposed to Appellant's motion came from the Survivors' Committee, not the Debtor. However, whether the Debtor officially interposed an objection to Appellant's motion is not controlling in determining the issue of prejudice. In assessing this factor, the Bankruptcy Court itself correctly focused on the prejudice to the Debtor, finding that the effect of the bar date was to establish a "bright line rule," thereby informing all that the door to any further claims would be closed as of that time and that opening the door for Appellant or anyone else would entail a risk of prejudice to the Debtor, including to the Survivors' Committee. Dkt. 6 at 23. The Bankruptcy Court reasoned that to allow "anybody in" with belated claims comparable to Appellant's would potentially open the

10

floodgates to other late claims, thereby prejudicing the Debtor's ability to resolve the issues of liability as it is charged with doing. *Id.*

Appellant maintains that because a reorganization plan had not been formally confirmed and no payments disbursed, no prejudice would flow from allowing her belated claim to be included. However, if Appellant's claim were treated as timely, the then ongoing and protracted and multilateral mediation and negotiation process, which has entailed enormous amounts of time and energy over approximately two years, would be disrupted. Dkt. 6 at 16–18.[5] The risk of even more belated additional claims being filed if Appellant's claim were permitted would also seriously impede the continued, efficient processing of the bankruptcy proceeding.

As recognized by our sister district court within the Seventh Circuit, "Prejudice from a late-filed claim is greater when the creditor's delay extends into the period in which the plan of reorganization is being 'negotiated, drafted, filed or confirmed.'" *In re Kmart Corp.*, 315 B.R. 718 (N.D. Ill. 2004). Here, the Bankruptcy Court considered Appellant's (as well as Appellee's) arguments, concluding that a risk of prejudice to the Debtor would result from allowing the belated claim to proceed and that the potential risk of inviting additional late claims was significant. The evidence before the Bankruptcy Court allowed the judge to make the reasoned decision she reached, and we will not

---

[5] Appellee contends that "Ms. Humphrey is the classic future claimant. She is not being ignored by this process. She should file a future claim if such a[n] opportunity arises through the confirmation of a plan, and if it doesn't . . . [a]s she has pointed out, [she has] viable claims under Virginia law. So she is not being left out." Dkt. 6 at 17. We note that we were not asked to and have not made any decision regarding Appellant's potential eligibility to file as a future claimant, if such an opportunity were to arise following the conclusion of the present litigation.

reweigh that evidence or further review the Bankruptcy Court's factual findings, beyond concluding that they are not clearly erroneous based on the record before us.

### ii. Length of Delay, and Its Potential Impact on Judicial Proceedings

Appellant next argues that the length of delay in the filing of her claim had little to no impact on the ongoing bankruptcy court proceedings. However, the Bankruptcy Court specifically found that the length of the delay in the filing of her claim, particularly considering the facts underlying Appellant's specific situation, would, if allowed, in fact negatively impact the ongoing judicial proceedings in this case. *See id.* at 22–23. The Bankruptcy Court ruled that if a claim filed fifteen months after the bar date were permitted based on the facts of Appellant's case, namely, "that they were abused by Nassar years ago, they knew it the whole time, they knew there was a bankruptcy, they knew there was a claims bar date, they were very involved, but they just didn't know what the (indiscernible) emotionally would be," the door would be opened to an undeterminable number of potential claimants who could make a similar argument. Such an inundation would clearly, significantly impact the course of the pending judicial proceedings. *Id.* at 23.

Appellant combines her argument as to this second factor under *Pioneer* with her argument regarding the first factor. Appellant argues that although her claim was filed "458 days after the Bar Date," the length of delay was inconsequential in light of the still pending status of the Amended Plan and related negotiations for Debtor's reorganization

at the time and that hers would be only a single claim added to the 510 other timely claims. Dkt. 8 at 24.

Appellee rebuts this argument on the same basis as it did in challenging the first factor. Specifically, Appellee argues that treating a claim as timely after extensive mediation has been conducted and remains ongoing between the parties would clearly delay and disrupt the proceedings because, "when the Committee has been negotiating regarding the amounts to be paid into a settlement, it is doing it from the perspective of claims that are timely filed." Dkt. 6 at 19. Appellee feared that, "especially given these facts, we [would] expect that there will be an avalanche of claims," which would substantially affect the "efforts to try to bring some finality to this case." *Id.*

The Bankruptcy Court clearly considered both the length of the delay and the potential impact of such a delay on the larger judicial proceedings. In assessing the impact of delay, "[n]o formula exists to calculate precisely when a delay is simply too long to be considered 'excusable' within the excusable neglect analysis. It is an equitable determination made on a case-by-case basis based on the evidence presented." *In re National Steel Corp.*, 316 B.R. 510 (Bankr. N.D. Ill. 2004). In *In re National Steel Corp.*, the Bankruptcy Court for the Northern District of Illinois denied a motion to allow an untimely claim that was filed sixteen months after the claims date. *Id.* at 519. In *In re KMart Corp.*, 381 F.3d 709 (7th Cir. 2004), the Seventh Circuit affirmed a bankruptcy court's refusal to allow an untimely claim on a theory of excusable neglect when the length of delay in filing was just one day after the original bar date. In that case, the

13

evidence established that the claimant and her attorney both had knowledge of the original bar date. *Id.*

Here, the claim was filed fifteen months after the bar date. It was not clearly erroneous for the Bankruptcy Court to conclude that such a delay was exceedingly long and disproportionate compared to other cases. "In overseeing [the Chapter 11] process, the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization*." Pioneer*, 507 U.S. at 389. In its determination, the Bankruptcy Court properly assessed the impact of the length of this delay on the ongoing proceedings and reasonably concluded that the upshot of this analysis favored the Debtor. This finding was not clearly erroneous, especially in light of the broad equitable powers granted to bankruptcy courts in overseeing Chapter 11 reorganizations.

### iii. Reason for Delay

Appellant next argues that the legitimacy of her reasons underlying and explaining the delay in filing her claim supports a finding of excusable neglect because she was not aware that she had a claim until the symptoms of her abuse manifested themselves during her pregnancy and subsequent childbirth in January 2020. The Bankruptcy Court considered this reason for the delay and found that "[she] knew exactly what happened to herself, she just didn't experience the suffering and the damages from it until it was sparked by – apparently by a childbirth occurrence," *id.* at 23, and that "she knew she had a claim, she just didn't know how big her damages were." *Id.* This is a factually correct distillation of Appellant's claim, as we understand it.

14

Appellee emphasizes that Appellant had received notice of the bar date and, if properly vigilant to her own interests, should have filed a timely claim upon receiving such notice. Further, as a member of Debtor USAG's Athlete's Council prior to and subsequent to the bar date, Appellant was well aware of the bar date and the ongoing Chapter 11 process, due to her active participation as an athlete representative to the Debtor. The representative of the Committee testified at the hearing, that "[w]e know there is no question that Ms. Humphrey knew about the bankruptcy and the bar date. But even more so, she had a unique position in USA Gymnastics to understand the history of what Mr. Nassar had done and the impact that other survivors said his so-called treatments gave rise to." Dkt. 6 at 17.

The Bankruptcy Court gave fair consideration to Appellant's reason for delay but did not ultimately credit it as a justification for her late filing, emphasizing that Appellant's membership on the Debtor's Athletes' Council provided her with a unique opportunity to be aware of the types of claims and injuries being raised in the bankruptcy proceeding before the claims date had passed. Neither the Bankruptcy Judge nor do we dispute Appellant's asserted reasons for her delay, but the Bankruptcy Court's determination that these reasons do not measure up as a justification for the late claim was not clearly erroneous, especially in light of the first two *Pioneer* factors.

### iv. Appellant's Good Faith

Finally, Appellant faults the Bankruptcy Court's assessment of Appellant's good faith in the context of the other *Pioneer* factors. Appellant argues that her good faith was established by the fact that she filed her claim a mere two days after Dr. Elig had

15

conducted his evaluation and determined that the abuse she had suffered had resulted in her delayed symptoms and her current diagnoses. The Bankruptcy Court clearly did not ignore Appellant's claims of good faith. Indeed, the Bankruptcy Court expressly found no dishonesty or bad faith on the part of Appellant, stating "I don't have any question about her veracity. She's been very truthful about it." *Id.*

However, despite her good faith, the Bankruptcy Court determined that this factor did not overcome the totality of all the other factors which undermine a finding of excusable neglect. In weighing these factors, the Bankruptcy Court stressed the meaning and importance of a bright line rule, not to preclude or foreclose a consideration of all other factors, but to be considered along with them. This analysis by the Bankruptcy Court was neither error nor an abuse of discretion. Our review does not permit or entail a reweighing of the *Pioneer* factors; we examine on appeal the legal sufficiency and acceptability of the bankruptcy judge's exercise of discretion in reaching her conclusions, which we have done here and find to be legally and factually sound.

### III.    Conclusion

Dr. Larry Nassar's pattern of sexual abuse was horrific in every way. In its scope and impact, it was both unprecedented and unconscionable. Like the Bankruptcy Court, we do not doubt or diminish in any respect Ms. Humphrey's veracity or emotional trauma from her victimization. However, after thorough review, we find that the Bankruptcy Court made no clear error in its determinations of fact or legal analysis nor did it abuse its discretion in finding no excusable neglect. We emphasize that our ruling here is not intended to convey any import regarding Appellant's potential eligibility to file as a future

claimant, if such an opportunity were to present itself following the conclusion of the present bankruptcy litigation.

For these reasons, the Bankruptcy Court's denial of Appellant Terin Humphrey's Motion to Allow Late Filed Claim to be Treated as Timely Filed is <u>AFFIRMED</u>.

IT IS SO ORDERED.

Date: 9/17/2021

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Kenneth H. Brown
Pachulski Stang Ziehl & Jones LLP
150 California St
15th Floor
San Francisco, CA 94111

Deborah J. Caruso
RUBIN & LEVIN, P.C.
dcaruso@rubin-levin.net

Steven W. Golden
Pachulski Stang Ziehl & Jones LLP
780 Third Ave
Ste 34th Floor
New York, NY 10017

Gregory M. Gotwald
PLEWS SHADLEY RACHER & BRAUN LLP
ggotwald@psrb.com

Joseph L. Mulvey
MULVEY LAW LLC
joseph@mulveylawllc.com

Dean N. Panos
JENNER & BLOCK LLP
353 N. Calrk Street
Chicago, IL 60654

John Thomas Piggins
MILLER JOHNSON
45 Ottawa Ave
SW Ste 1100
PO box 306
Grand Rapids, MI 49501

George M. Plews
PLEWS SHADLEY RACHER & BRAUN LLP
gplews@psrb.com

Melissa Megan Root
JENNER & BLOCK LLP
mroot@jenner.com

Ilan D. Scharf
PACHULSKI STANG ZIEHL & JONES LLP
ischarf@pszjlaw.com

James I. Stang
Pachulski Stang Ziehl & Jones LLP
150 California St
15th Floor
San Francisco, CA 94111

Catherine L. Steege
JENNER & BLOCK LLP
csteege@jenner.com

Mark D. Stuaan
BARNES & THORNBURG, LLP (Indianapolis)
mstuaan@btlaw.com

Shaunestte N. Terrell
COHEN & MALAD LLP

18

sterrell@cohenandmalad.com

Meredith R. Theisen
RUBIN & LEVIN, P.C.
mtheisen@rubin-levin.net

Amina Thomas
COHEN & MALAD LLP
athomas@cohenandmalad.com